IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSE PERNICE-DEMBOSZ and ) <br> MICHAEL DEMBOSZ, ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> COUNTRYWIDE BANK, FSB, ) <br> COUNTRYWIDE HOME LOANS, INC., BANK ) <br> OF NEW YORK, ONE SOURCE MORTGAGE ) <br> INC., and CHARLES G. MANGOLD III, ) <br> ) <br> Defendants. ) | Case No. 07 C 4654 <br> Hon. George W. Lindberg |

## MEMORANDUM OPINION AND ORDER

Before the court is defendants Countrywide Bank, FSB ("Countrywide"), Countrywide Home Loans, Inc. (Countrywide HL"), and Bank of New York's ("BONY") (collectively "remaining defendants") joint motion for summary judgment. Plaintiffs Rose Pernice-Dembosz ("Mrs. Dembosz") and Michael Dembosz ("Mr. Dembosz") (collectively "plaintiffs") filed a four-count amended complaint alleging claims for various violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*., (Count I); a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq*., ("Count II"); breach of fiduciary duty ("Count III"); and negligent misrepresentation ("Count IV"). The TILA violations were alleged against all five defendants. The three state law claims – a violation of the ICFA, breach of fiduciary duty and negligent misrepresentation – were only alleged against defendants Countrywide, One Source Mortgage, Inc. ("One Source") and Charles G. Mangold III ("Mangold"). *Compl*. at ¶ 1.

On April 11, 2008, plaintiffs dismissed their claims against One Source and Mangold, pursuant to a settlement between those parties. Countrywide, Countrywide HL and BONY are

the only three remaining defendants. Plaintiffs did not file a motion for summary judgment. For the reasons set forth more fully below, defendants' joint motion for summary judgment is granted in part and denied in part. The motion for summary judgment is granted as to Counts II, III, IV, and one claim in Count I and denied as to the remaining claims in Count I.

## I. BACKGROUND FACTS

This case stems from a dispute between the parties regarding the terms of the current mortgage loan on plaintiffs' home in Tinley Park, Illinois. Plaintiffs are married and co-own the Tinley Park Home. Plaintiffs seek to rescind their mortgage loan and recover statutory damages for alleged TILA violations. Plaintiffs also seek damages on their state law claims. The following facts are undisputed unless specifically noted below.

In August 2005, Mrs. Dembosz saw a print advertisement for a mortgage loan with a lower interest rate than the one she and her husband were currently paying. At that time, Mrs. Dembosz and her husband had a mortgage loan with an interest rate between five and six percent. Because plaintiffs were interested in consolidating their household debt and lowering the interest rate on their mortgage, Mrs. Dembosz contacted the print advertiser, One Source, to learn more about the advertisement and to see if she and/or her husband qualified for the advertised loan. After discussions with One Source's owner, Mangold, and other One Source employees, plaintiffs decided to refinance their home loan, with One Source acting as their mortgage broker.

At the time plaintiffs contacted One Source about refinancing their home loan, they did not have particularly high credit scores and both plaintiffs had previously filed for bankruptcy. In an attempt to improve their credit scores and qualify for a lower mortgage interest rate, plaintiffs decided to refinance their home loan twice. Fieldstone Mortgage was the lender for the first

refinancing, which closed on September 16, 2005. After refinancing with Fieldstone, plaintiffs paid off $68,897.41 in debt. That debt included a $34,076.41 equity line of credit, two car loan totaling $23,579, and two credit cards with balances of $11,242. Plaintiffs also received $27,133.08 in cash.

After making one payment on the Fieldstone loan, plaintiffs refinanced again on November 30, 2005. Countrywide was the lender for the second refinancing and both plaintiffs were present at the closing for the Countrywide mortgage loan. Mr. Dembosz is the only borrower listed on the Countrywide loan and related documentation. Mr. Dembosz received a $371,500 loan from Countrywide in exchange for a mortgage lien on the Tinley Park home. Countrywide HL serviced the Countrywide loan. Sometime after November 30, 2005, Countrywide sold the loan to BONY. The Countrywide Loan is an adjustable rate loan with a 3.25% introductory interest rate. That introductory interest rate could adjust upward or downward beginning on February 1, 2006.

Plaintiffs admit that they only briefly reviewed and/or scanned the closing documents for the Countrywide loan. Neither plaintiff thoroughly read or reviewed the documents they received and signed at the November 30, 2005 closing. One of the documents plaintiffs signed at the closing was an acknowledgment of receipt of a Notice of Right to Cancel form ("Notice"). The Notice provided details regarding the rights of the borrower and co-owners of the property subject to the mortgage lien to cancel the loan and corresponding mortgage. The Notice at issue in this case listed Mr. Dembosz as the only borrower on the loan and did not include Mrs. Dembosz's name in type-written form anywhere on the document.

Both plaintiffs signed an acknowledgment of receipt of Notices that the closing agent

3

took with her after the closing.  The receipt both plaintiffs signed stated that they "each acknowledge receipt of two copies of Notice of Right to Cancel, and one copy of the Federal Truth in Lending Disclosure Statement."  At his deposition, Mr. Dembosz stated that he only received one copy of the Notice and not two as the signed acknowledgment indicated.  Mr. Dembosz's copy of the Notice did not include Mrs. Dembosz's type-written name, or signature.  Mrs. Dembosz testified that she did not receive any copies of the Notice.  Mr. Dembosz also stated that he placed all of the documents that he received at the closing into a file folder.  During the discovery phase of this case, Mr. Dembosz provided copies of the documents in the file folder to defendants.  There was only one copy of the Notice in the file folder and that copy did not include Mrs. Dembosz's type-written name, or signature.

On February 1, 2006, the interest rate on the Countrywide mortgage loan adjusted upward.  Thereafter, plaintiffs sent rescission notices to Countrywide and BONY, but neither defendant agreed to rescind the loan.  Plaintiffs have not made any payments on the Countrywide loan since June 2007.  On the present record, it is unclear whether plaintiffs would have the funds necessary, or the ability to obtain such funds, to repay the Countrywide loan if rescission is ordered.

## II.  LEGAL ANALYSIS

*A.  Summary Judgment Standard*

To succeed on a motion for summary judgment, the moving parties must show that the pleadings, depositions, answers to interrogatories, and admissions on file, together with any admissible affidavits do not create a genuine issue of material fact and that they are entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). A genuine issue of material fact only exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving parties. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering this motion for summary judgment, the Court must construe all facts in the light most favorable to the non-moving parties and must view all reasonable inferences in those parties' favor. *Id*. at 255.

    *B. State Law Claims*

First, the court turns to plaintiffs' alleged state law claims for a violation of the ICFA, breach of fiduciary duty and negligent misrepresentation. As stated above, plaintiffs settled with defendants One Source and Mangold. Therefore, Countrywide is the only remaining defendant as to the state law claims. To the extent these claims are premised on an agency theory of liability, Countrywide is entitled to the entry of summary judgment in its favor. *Doe v. City of Chicago*, 360 F.3d 667, 673 (7th Cir. 2004)(citing *Gilbert v. Sycamore Municipal Hospital*, 156 Ill.2d 511, 528 (1993)). Plaintiffs argue that Countrywide, as the principal of One Source and Mangold, is vicariously liable for the alleged state law violations of its two agents. However, plaintiffs settled their claims against the purported agents, One Source and Mangold, as evidenced by the joint stipulation plaintiffs filed on April 11, 2008. It is well-settled Illinois law that "any settlement between the agent and the plaintiff must also extinguish the principal's vicarious liability." *Gilbert*, 156 Ill.2d at 528 (quoting *American National Bank and Trust Co. v. Columbus-Cuneo-Cabrini Medical Center*, 154 Ill.2d 347, 355 (1992)). Therefore, Countrywide cannot be vicariously liable for One Source and Mangold's alleged state law violations.

In an attempt to save their state law claims as to Countrywide, plaintiffs argue that in addition to being vicariously liable for the actions of One Source and Mangold, Countrywide is

5

independently liable for the alleged state law violations under theories of: (1) aiding and abetting; (2) knowing participation; and (3) conspiracy. Unfortunately for plaintiffs, the record before the court is completely devoid of any facts to support a finding of liability as to Countrywide. At this stage in the case, plaintiffs must set forth specific facts that demonstrate a genuine issue for trial. *See Rozskowiak v. Vill. of Arlington Heights,* 415 F.3d 608, 612 (7th Cir.2005). Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir.2003)(internal quotation and citation omitted). Plaintiffs have failed to cite to any facts that suggest: (1) Countrywide violated the ICFA; (2) had a fiduciary duty to plaintiffs; (3) breached a duty related to plaintiffs; or (4) made any negligent representations to plaintiffs. Accordingly, the motion for summary judgment is granted as to plaintiffs' state law claims, Counts II-IV.

  *C. Violation of TILA*

  Now the court turns to plaintiffs' TILA violation claims against the three remaining defendants. Plaintiffs claim that Countrywide's disclosures to them did not comply with the requirements of TILA. Specifically, plaintiffs claim that: (1) Countrywide only delivered one Notice of Right to Cancel form ("Notice") to Mr. Dembosz at the closing; (2) Countrywide failed to delivery any Notice to Mrs. Dembosz; (3) the Notice made it appear that only Mr. Dembosz, not both plaintiffs, had a right to cancel the mortgage; (4) Countrywide did not make a clear and accurate disclosure of the cost of credit or the fact that the interest rate on plaintiffs' home mortgage loan could adjust after the first mortgage payment; and (5) defendants failed to honor plaintiffs' timely rescission request.

6

Congress enacted TILA to promote the informed use of credit. 15 U.S.C § 1601(a). TILA requires creditors to clearly and conspicuously disclose certain terms and costs of credit to consumers before a credit transaction takes place. *See* 12 C.F.R. § 226.17. "The sufficiency of TILA-mandated disclosures is determined from the standpoint of the ordinary consumer." *Rivera v. Grossinger Autoplex, Inc.*, 274 F.3d 1118, 1121-22 (7th Cir. 2001)(citing *Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 327-28 (7th Cir. 1999)). When it comes to interpreting and applying the provisions of TILA, "hyper-technicality reigns." *Hamm v. Ameriquest Mortgage Co.*, 506 F.3d 525, 529 (7th Cir. 2007)(quoting *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir. 2006)).

Among other things, TILA provides borrowers with a right to rescission and "requires creditors 'clearly and conspicuously' to disclose to borrowers their right to rescind and the length of the rescission period, as well as to provide borrowers with 'appropriate forms . . . to exercise [their] right to rescind [a] transaction." *Handy*, 464 F.3d at 763 (quoting 15 U.S.C. § 1635(a)). The Federal Reserve Board is tasked with implementing TILA and has promulgated Regulation Z, an implementation regulation. 12 C.F.R. § 226 *et seq*. *Handy*, 464 F.3d at 763. Regulation Z provides, *inter alia*, that:

> In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind . . .

12 C.F.R. § 226.23(b)(1). Regulation Z also provides a right to rescind to non-borrower, co-owners of the property subject to the mortgage lien. 12 C.F.R. § 226.23(a)(1).

As co-owners of the Tinley Park home, under Regulation Z, both plaintiffs were entitled to rescind the Countrywide loan, and Countrywide was required to deliver two copies of a clear

7

and conspicuous Notice to each plaintiff. Both plaintiffs signed a document stating that they "each acknowledge receipt of two copies of Notice of Right to Cancel, and one copy of the Federal Truth in Lending Disclosure Statement." Their signatures on that document create a "rebuttable presumption of delivery of required documents." *Briggs v. Provident Bank*, 349 F. Supp. 2d 1124, 1129 (N.D. Ill. 2004). "[B]orrowers can attempt to overcome this presumption with testimony about their closings and what documents they received (or did not receive), as well as by presenting copies of the [Notices] from their own records." *In re American Mortgage Co.*, 2006 WL 1525661, *4 (N.D. Ill. 2006).

Through their deposition testimony, plaintiffs have overcome the rebuttable presumption and created a genuine issue of material fact as to whether Countrywide complied with the requirements in Regulation Z. Plaintiffs testified at their depositions that Countrywide did not deliver any copies of the Notice to Mrs. Dembosz and only delivered one copy of the Notice to Mr. Dembosz. Further, Mr. Dembosz stated that he placed all the documents he and/or his wife received at the closing into a folder (the "closing folder"). During the discovery phase of this case, plaintiffs provided defendants with copies of the documents in the closing folder. The documents in the closing folder only included one unsigned copy of a Notice. Because there is a genuine issue of material fact as to whether Countrywide provided Mr. Dembosz with two copies of the Notice and Mrs. Dembosz with any copies of the Notice at the closing, the motion for summary judgment is denied as to plaintiffs' claims related to receipt of the Notice in Count I of the amended complaint.

There is also a genuine issue of material fact as to whether the Notice Countrywide provided to Mr. Dembosz clearly and conspicuously notified Mrs. Dembosz of her right to

8

rescind the mortgage.  *See* C.F.R. § 226.23(b)(1).  The Notice Mrs. Dembosz signed and returned to the closing agent at the closing did not include her name in type-written form anywhere on the document.  The only place Mrs. Dembosz's name appeared on the Notice was in the form of her signature above a generic signature line.  Further, Mrs. Dembosz's name was not included at all – in either type-written or signature form – on the copy of the Notice Countrywide provided to Mr. Dembosz for his closing file.  Under these facts, defendants' motion for summary judgment is denied as to plaintiffs' claim in Count I that Countrywide failed to clearly and conspicuously notify her of her right to rescind the mortgage.

The motion for summary judgment is also denied as to plaintiffs' claims related to rescission.  Because there is a genuine issue of material fact as to the whether Countrywide complied with the requirements of Regulation Z and provided plaintiffs with adequate copies of the Notice at the closing, there is also a genuine issue of material fact as to whether plaintiffs made timely demands for rescission.  Therefore, the motion for summary judgment is denied as to plaintiffs' claims related to rescission in Count I.  The court also notes that on the present record, it is unclear which defendant owned the mortgage loan at the time of plaintiffs' requests for rescission on June 28, 2007 and July 26, 2007.  It is also unclear whether plaintiffs would have the necessary funds, or be able to obtain such funds, to repay the Countrywide Loan if the court orders rescission.

Finally, the court turns to plaintiffs' claim that Countrywide did not make a clear and accurate disclosure of the cost of credit or the fact that the interest rate on plaintiffs' home mortgage loan could adjust after the first mortgage payment.  Plaintiffs make two arguments in support of this claim.  First, plaintiffs argue Countrywide is liable for various misstatements and

9

misrepresentations made by One Source and Mangold based on an agency theory of liability. As the court stated above, in light of plaintiffs' settlement with One Source and Mangold, the remaining defendants are not vicariously liable for any alleged misrepresentation by One Source and Mangold.

Second, plaintiffs argue that Countrywide's loan document itself was confusing and misleading. *Resp. in Opposition to Mot. For Summ. J* at 9. However, plaintiffs did not include any facts in their Amended Local Rule 56.1(b)(3)(C) Statement of Additional Facts ("Amended L.R. 56.1(b)(3)(C) Statement") to support this argument. In their Amended L.R. 56.1(b)(3)(C) Statement, plaintiffs reference a 5/1 ARM Disclosure that One Source provided to Mr. Dembosz prior to the closing. As stated above, Countrywide is not vicariously liable for One Source's actions. Further, disclosures in a document plaintiffs received prior to the closing cannot render the loan documents provided to the plaintiffs at the closed confusing or misleading, especially in light of plaintiffs' admission that they did not read the loan papers and other related documents they signed and received at the closing. As the court stated above, summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson,* 325 F.3d at 901 (internal quotation and citation omitted). Plaintiffs have not cited to any facts to support their contention that Countrywide failed to make a clear and accurate disclosure of the cost of credit or the fact that the interest rate on plaintiffs' home mortgage loan could adjust after February 1, 2006. Therefore, the motion for summary judgment is granted as to this claim in Count I.

### III. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted in

part and denied in part. The motion is granted as to Counts II, III, IV and plaintiffs' claim in Count I that Countrywide did not make a clear and accurate disclosure of the cost of credit or the fact that the interest rate on plaintiffs' home mortgage loan could adjust after the first mortgage payment. The motion for summary judgment is denied as to plaintiffs' claims in Count I related rescission and the Notice. There do not appear to be any remaining claims as to defendant Countrywide Home Loans, Inc. Therefore, judgment will be entered in favor of Countrywide Home Loans, Inc. and against plaintiffs.

**ORDERED:** Defendants' motion for summary judgment [107] is granted as to Counts II, III, IV and one claim in Count I and denied as to the other claims in Count I. Countrywide Home Loans, Inc.'s motion to deem certain facts admitted [134] is denied as moot. There do not appear to be any remaining claims as to defendant Countrywide Home Loans, Inc. Therefore, judgment is entered in favor of Countrywide Home Loans, Inc. and against plaintiffs. The parties' joint proposed final pretrial order is due in chambers by 2:00 p.m. on May 27, 2008. In the proposed final pretrial order, the parties must address whether plaintiffs have sufficient funds to repay Countrywide and/or Bank of New York if a rescission of the loan is ordered. The parties must also file all proposed motions in limine by 2:00 p.m on May 27, 2008. The status hearing set for May 14, 2008 at 9:30 a.m. is stricken.

E N T E R:

GEORGE W. LINDBERG
SENIOR U.S. DISTRICT JUDGE

DATED: May 13, 2008